FILED
2013 Sep-03  PM 01:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| APRIL KENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.  5:12-CV-2586-SLB |
| | ) | |
| CAROLYN  W.  COLVIN,  Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff April Kent brings this action pursuant to 42 U.S.C. § 405(g),[1] seeking review of the Commissioner of Social Security's final decision denying her application for a period of disability, disability insurance benefits ["DIB"], and supplemental security income ["SSI"].  Upon review of the record and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

Ms. Kent initially filed an application for a period of disability, DIB, and SSI on January 13, 2009.  (Doc. 5-3 at R.14.)[2]  Her claims were denied initially.  (*Id*.) Thereafter, she requested a hearing before an Administrative Law Judge ["ALJ"], which was held on

---

[1]The judicial review provision for a DIB claims, 42 U.S.C. § 405(g), also applies to claims for SSI, *see*  42 U.S.C. § 1383(c)(3).

[2]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

October 8, 2010.  (*Id*.)  After the hearing, the ALJ found that, while Ms. Kent was unable to perform any past relevant work, she was capable of making a vocational adjustment to other work, such as sorter and assembler, which are jobs that exist in significant numbers in Alabama and in the national economy.  (*Id*. at R.26-27.)   In light these findings, the ALJ denied Ms. Kent's request for a period of disability, DIB, and SSI on November 5, 2010.  (*Id.* at R.28.)

Ms. Kent then requested the Appeals Council to review the ALJ's decision.  (*Id*. at R.10.)  She did not submit additional evidence to the Appeals Council.  (*See id*. at R.5.)  The Appeals Council found no reason under its rules to review the ALJ's decision, and it denied Ms. Kent's request for review.  (*Id*. at R.1.)  Therefore, the ALJ's decision is the final decision of the Commissioner.  (*Id*.)

Following denial of review by the Appeals Council, Ms. Kent filed an appeal in this court.  (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court's role is a narrow one:  "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied."  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The court gives deference to factual findings and reviews questions of law de novo.  *Cornelius v.*

*Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).   The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cor. 1990)(quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983))(internal quotations and other citation omitted).   "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)(internal quotations and citations omitted)

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145.   "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.  DISCUSSION

### A.  THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability, DIB, and/or SSI.  *See* 20 C.F.R. § 404.1520(a)(1)-(2); 20 C.F.R. § 416.920(a)(1)-(2); *Bowen v. City of New York,* 476 U.S. 467, 470 (1986).  "[A]n individual shall be considered to be disabled for purposes

3

of [determining eligibility for DIB and SSI benefits] if [she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(1); *see also* 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A). The specific steps in the evaluation process are as follows:

**1. Substantial Gainful Employment**

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987). The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful."[3] 20 C.F.R. § 404.1572; 20 C.F.R. § 416.972. If the claimant is working and that work is

---

[3]The regulations state:

(a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572; 20 C.F.R. § 416.972.

substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b).  "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 Fed. Appx. 862, 863 (11th Cir. 2012).[4]

The ALJ found that Ms. Kent had not engaged in substantial gainful activity since January 1, 31, 2008, the alleged onset date.  (Doc. 5-3 at R.16.)

## 2.  Severe Impairments

If the claimant is not engaged in substantial gainful activity,  the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c).  "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D).  The regulations provide: "[I]f you do not have any impairment or combination of impairments

---

[4]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it.  ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***."  11th Cir. R. 36-2 (emphasis added).

which significantly limits your physical or mental ability to do basic work activities, we will

find that you do not have a severe impairment and are, therefore, not disabled.  We will not

consider your age, education, and work experience." 20 C.F.R. § 404.1520(c); 20 C.F.R. §

416.920(c).  "An impairment can be considered as not severe only if it is a slight abnormality

which has such a minimal effect on the individual that it would not be expected to interfere

with the individual's ability to work, irrespective of age, education, or work experience."

*Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a); 20

C.F.R. § 416.921(a).  A complainant may be found disabled based on a combination of

impairments even though none of the individual impairments alone are disabling. *Walker v.*

*Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 404.1523; 20 C.F.R. §

416.923.  A claimant has the burden to show that she has a severe impairment or combination

of impairments.  *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Kent had the following severe impairments:

hyperthyroidism, Graves' disease, multi-nodular goiter, and anemia. (Doc. 5-3 at R.16.) He

also found her alleged impairments of diabetes mellitus, hypertension, and infections were

not severe.  (*Id*. at R.17.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine

whether the claimant's impairment meets the durational requirement and whether it is

equivalent to any one of the listed impairments, which are impairments that are so severe as

to prevent an individual with the described impairment from performing substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings].  If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d).  The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings.  *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Kent did not have an impairment or combination of impairments that met or medically equaled a Listing.  (Doc. 5-3 at R.18.)

### 4.  Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); 20 C.F. R. § 416.920(a)(4)(iv), (f).  At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work.  20 C.F.R. § 404.1560(b); 20 C.F.R. § 416.960(b).  "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it.  20 C.F.R. § 404.1560(b)(1); 20 C.F.R. § 416.960(b)(1).  If the claimant is capable of performing her past relevant work, the Commissioner will find she is not disabled.  20 C.F.R. § 404.1560(e); 20 C.F.R. §

416.920(e).  The claimant bears the burden of establishing that the impairment prevents her from performing past work.  *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Kent could perform a limited range of sedentary work; he found:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).  I specifically find that claimant could lift/carry up to a maximum of ten pounds at one time and occasionally lift/carry articles weighing [more] than ten pounds, such as docket files, ledgers, and small tools.  Claimant could sit up to six hours of an eight-hour workday, and she could stand or walk up to two hours of an eight-hour workday.  The claimant has an unlimited ability to push/pull with the upper and lower extremities bilaterally in a manner consistent with the strength requirements of sedentary work.  However, in order to perform the exertional demands of sedentary work, claimant would require a sit/stand option.  Claimant has no postural, manipulative, visual, communicative, or environmental limitations.

(Doc. 5-3 at R.19.)  The ALJ found that Ms. Kent could not perform her past relevant work because such work was performed at a light exertion level and did not allow a sit/stand option.  (*Id*. at R.26.)

As for Ms. Kent's other vocational factors, the ALJ found Ms. Kent was 23 years old on the alleged onset date.  (*Id*.)  She had a limited education and was able to communicate in English.  (*Id*.)  Also, he found that whether Ms. Kent had any transferable job skills was not material to his decision.  (*Id*.)

### 5.  Other Work in the National Economy

If the claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant – in light of her RFC, age, education, and work

experience – is capable of performing other work that exists in substantial numbers in the national economy. *Reynolds-Buckley*, 457 Fed. Appx. at 863; *see also* 20 C.F.R. § 404.1520(c)(1); 20 C.F.R. § 416.920(c)(1).   The regulations provide:

> If we find that your residual functional capacity is not enough to enable you to do any of your past relevant work, we will use the same residual functional capacity assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work.  We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience.  Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1); 20 C.F. R. § 416.960(c)(1).  If the claimant is not capable of performing such other work, the Commissioner must find the claimant is disabled.  20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).

Because the ALJ found Ms. Kent could not perform a full range of sedentary work, he consulted a Vocational Expert [VE] to determine whether any jobs exist in the national economy that Ms. Kent, considering her RFC and her vocational factors, could perform.  The VE testified that an individual with Ms. Kent's limitations and vocational factors could perform the jobs of sorter and assembler, which are jobs that exist in significant numbers in Alabama and in the national economy.  (Doc. 5-3 at R.27, R.87-88.)  However, the VE testified that Ms. Kent could not perform these jobs if she was unable to work on a regular and sustained basis for eight hours a day and five days a week.  (*Id.* at R.88-89.)  Based on this testimony, the ALJ found Ms. Kent could perform other work, and, therefore, he found

9

Ms. Kent was not under a disability at any time from January 1, 2008, to November 5, 2010. (*Id*. at R.27-28.)

## B.  MS. KENT'S CLAIM

Ms. Kent alleges that she has "a  thyroid condition that causes her to have thyroid storms where her heart races and she [has] weakness in her body and legs."  (Doc. 8 at 2 [citing doc. 5-3 at R.74].)  The ALJ found that these thyroid storms were not of the frequency and/or intensity so as to be disabling.  Ms. Kent states the issue on appeal as, "Whether or not the ALJ and the Commissioner in this matter improperly applied 42 U.S.C. § 423(d)(5)(A) as that statute applies to the non-exertional impairment of hyperthyroidism and the thyroid storms that the Plaintiff suffers?"  (Doc. 8 at 7-8.)

Section 423(d)(5)(A) states:

> An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.  An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.  Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.  . . .

42 U.S.C. § 423(d)(5)(A).[5]  In the Eleventh Circuit, subjective symptoms, such as pain and

fatigue, are evaluated as follows:

> When a claimant attempts to establish disability through her own testimony concerning pain or other subjective symptoms, [the court applies] a three-part "pain standard," which requires evidence of an underlying medical condition, and either (A) objective medical evidence that confirms the severity of the alleged pain stemming from that condition, or (B) that the objectively determined medical condition is so severe that it can reasonably be expected to cause the alleged pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)(stating that this "standard also applies to complaints of subjective conditions other than pain"). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.

> When the medical signs and laboratory findings establish that the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must evaluate the intensity and persistence of a claimant's symptoms and the extent to which those symptoms limit the claimant's capacity for work.  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); Social Security Regulation 96–7p ("SSR 96–7p") at 2.  In doing so, the ALJ is to consider the objective medical evidence and other evidence provided by the claimant and her treating and nontreating sources concerning what may precipitate or aggravate the claimant's symptoms, what medications, treatment or methods are used to alleviate the symptoms, and how the symptoms affect the claimant's daily living.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96–7p at 3.  The ALJ's credibility finding must be grounded in the evidence and contain specific reasons that are supported by the record evidence.  SSR 96–7p at 4.

*Mack v. Commissioner of Social Security*, 420 Fed. Appx. 881, 883 (11th Cir. 2011).

---

[5]"In making determinations with respect to disability under [SSI] subchapter, the provisions of section[ ] . . . 423(d)(5) of [the Social Security Act] shall apply in the same manner as they apply to determinations of disability under [the DIB] subchapter . . . ."  42 U.S.C. § 1382c(a)(3)(H)(i).

In this case the ALJ articulated and applied the appropriate legal standard.  (*See* doc. 5-3 at 19.)  As to the first part of the test, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.* at R.21.)  The record contains no objective medical evidence substantiating the intensity, persistence, and limiting effect of Ms. Kent's subjective symptoms.  Therefore, the ALJ examined Ms. Kent's statements and found that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.*) Ms. Kent "argues that the reasons given to reject her testimony as to the frequency and duration of the thyroid storms and thyroid exacerbations are not supported by substantial evidence and cannot support the decision to deny benefits to the Plaintiff."  (Doc. 8 at 14.)

She alleges, "The first reason given by the ALJ to reject the Plaintiff's credibility as to her thyroid storms is that 'In terms of hyperthyroidism and Graves's disease, the claimant has had two hospitalizations, but she has not sought treatment for thyroid impairment since July 2009.'"  (Doc. 8 at 14 [quoting doc. 5-3 at R.22].)  According to Ms. Kent, "[T]his reason given by the ALJ is contrary to and not supported by substantial evidence and is not an adequate reason to reject the testimony of the Plaintiff." (*Id.* [citing *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)].)

In discussing Ms. Kent's RFC, as impacted by her thyroid conditions, the ALJ noted that Ms. Kent had been seen in the emergency room or in the doctor's office on four occasions – January 2009, July 2009, October 2009, and September 2010.  (Doc. 5-3 at 21-22.)  He noted that the last two occasions were in response to her complaints of a sore throat. (*Id*. at 22.)  He found:

> [T]he treatment notes from both [the October 2009] exacerbation of infections and the next one almost one year later [in September 2010] do not contain evidence that the thyroid condition worsened and no treatment record identifies hyperthyroidism as a cause of the infections.  Furthermore, claimant did not again seek treatment for [a] sore throat until September 2010, but this time, the claimant did not require hospitalization, her medications were refilled without change, and she was recommended for follow-up in three months.
>
> In terms of hyperthyroidism and Graves' disease, the claimant has had two hospitalizations, but she has not sought treatment for thyroid impairment since July 2009.  Furthermore, the exacerbation of symptoms responds well to treatment, and the relative lack of treatment seeking history suggests that the symptoms and limiting effects of thyroid impairment are not as harsh as the claimant alleges.

(*Id*.)

The medical records from Ms. Kent's last two treatments support the ALJ's findings. (*See* doc. 5-9 at R.331, 334; doc. 5-11 at R.589.)  Although Ms. Kent contends that the infections that caused her to seek treatment in October 2009 and September 2010 were caused by her thyroid impairments, the medical records show that neither visit resulted in treatment for any exacerbation of her thyroid condition or a thyroid storm.

13

The court finds that the ALJ's finding that the medical records demonstrated that Ms. Kent had not sought treatment for her thyroid condition since July 2009 is supported by substantial record evidence.

Ms. Kent contends, "The next reason given by the ALJ [for discrediting her testimony] is that '. . . the exacerbations of symptoms respond[ ] well to treatment,[6] and the relative lack of treatment seeking history suggests that the symptoms and limiting effects of thyroid impairment are not as harsh as the claimant alleges.'" (Doc. 8 at 14-15 [quoting doc. 5-3 at R.22].)  She argues "that the in hospital response to treatment does not diminish her credibility as to the duration and frequency of her thyroid storms or an exacerbation[ ] as consistent with each hospitalization was a history that she had the thyroid storm or an exacerbation type symptoms for several days prior to the hospitalization."  (*Id*. at 15 [citations to the record omitted].)  The fact that Ms. Kent may have experienced symptoms for some time prior to seeking treatment does not support her testimony as to the frequency of thyroid storms or the ALJ's decision to discredit this testimony.

Ms. Kent testified that she has episodes of her heart racing and feeling weak caused by her thyroid conditions; these episodes occur once a month and last seven days.  (Doc. 5-3 at R.74-75.)  During this time, she testified that she cannot perform any of her usual housekeeping chores and that she stays in the bed 12 hours of a 24-hour day.  (*Id*. at R.76.)  She stated that the only relief she receives is in the hospital emergency room; she testified:

---

[6]Ms. Kent does not object to this finding, which is supported by her medical records.

14

A. . . . It's – I do nothing period when I'm feeling sick or down.  I'm just laying there because my muscles hurt, I feel weak and tired like I'm ready to pass out so I just lay there until I go to the hospital.

Q. Okay.  Now the – what do you do to get relief when this racing and weakness that occurs once a month happens?

A.  I go to the emergency room.

Q.  Okay.  Other than that?

A.  That's it.

(*Id*. at R.78.)  In other words, Ms. Kent testified that she had disabling symptoms arising from her thyroid conditions every month and that her disabling symptoms were eased only by a visit to the emergency room.

If this testimony were credible, the court would expect to find medical records indicating monthly visits to the emergency room.  However, Ms. Kent's treatment records show only three emergency room visits and a doctor's office visit between January 2009 and September 2010.  This sporadic treatment is inconsistent with Ms. Kent's sworn testimony that she is incapacitated by weakness and tiredness or other symptoms related to thyroid storms, which last for a full week and occur each and every month.  The ALJ's decision to discredit Ms. Kent's testimony as to the frequency of her thyroid storms is supported by substantial evidence in the record.

The court finds that the record supports the ALJ decision that Ms. Kent was not unable to work for one week every month due to symptoms caused by her severe impairments.  Ms. Kent's testimony was very specific.  She testified that she was not capable

of performing any work for one week a month during which she suffered a thyroid storm. She testified that the only relief for her symptoms during her thyroid storms was treatment in the emergency room.  The medical records show that plaintiff sought treatment four times over a 21-month period, with the last two treatments being separated by almost a year.  This evidence is sufficient to support the ALJ's decision to discredit Ms. Kent's testimony as to the intensity and persistence of her symptoms and the extent to which the symptoms limit her capacity to work.[7]

Based on the record as a whole, the court finds that the ALJ's determination that Ms. Kent is capable of performing a limited range of sedentary work is supported by substantial evidence.  Based on the foregoing, the decision of the ALJ, as adopted by the Commissioner, denying Ms. Kent's claim for a period of disability, DIB, and SSI is due to be affirmed.

---

[7]The court pretermits discussion of the other issues raised by Ms. Kent regarding the activities she can perform when she is not experiencing a  thyroid storm, her onset date, and her compliance with treatment regimen.  Given the court's finding with regard to Ms. Kent's credibility as to the frequency of the thyroid storms, these issues are immaterial.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be affirmed.  An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 2nd day of September, 2013.

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE